**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

**TRISTAN S. GOFF**                                                                                         **PLAINTIFF**

vs.                                    Civil No. 2:19-cv-02082-PKH-MEF

**ANDREW M. SAUL, Commissioner,**                                                               **DEFENDANT**
**Social Security Administration**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Tristan S. Goff, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382.  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

### I.      Procedural Background

Plaintiff protectively filed his current application for SSI on April 5, 2016.  (ECF No. 11, p. 20).  Plaintiff alleges disability since January 21, 1997, due to birth defects of both hands, tachycardia, depression, sleep apnea, left ear issues, left eye issues, Tourette's syndrome, and ADHD.  (*Id.*, pp. 20, 56, 261).

Plaintiff's application was denied initially and upon reconsideration.  (*Id.*, pp. 20, 127-29, 136-37).  An administrative hearing was held on February 28, 2017, before the Hon. Edward M. Starr, Administrative Law Judge ("ALJ").  (*Id.*, pp. 51-78).  Plaintiff and his grandmother, Paula McGee, testified.  (*Id.*).  Plaintiff was represented by counsel, Michael Hamby.  (*Id.*).  The record

1

was held open for additional medical evidence, and the ALJ and Plaintiff deferred hypotheticals to a vocational expert ("VE") until after the additional evidence could be procured. (*Id*., p. 81). A supplement administrative hearing was held on June 18, 2018, at which plaintiff and the VE, Zachariah Langley, testified. (*Id*.). Plaintiff was again represented by counsel, Michael Hamby. (*Id*., pp. 35-50).

By written decision dated November 20, 2018, the ALJ found Plaintiff had the following severe impairments: bilateral disorder of the thumbs/hands, degenerative disc disease, attention deficit hyperactivity disorder, Tourette's disorder, borderline intellectual functioning, organic brain syndrome, and affective disorder. (*Id*., pp. 17, 22). The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments. (*Id*., pp. 22-23). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 C.F.R. § 416.967(b), except occasional fingering and handling with the right upper extremity, less than occasionally with the left non-dominant upper extremity; can do simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed. He can respond to supervision that is simple, direct, and concrete.
> (*Id*., pp. 24-26).

The ALJ found that Plaintiff had no past relevant work ("PRW"), but with the assistance of the VE, the ALJ determined Plaintiff could perform the requirements of the following representative occupations: investigator, dealer accounts, with 57,000 jobs in the national economy; sandwich board carrier, with 7,300 jobs in the national economy; and, cotton classing aide with 4,000 jobs in the national economy. (*Id*., p. 26). The ALJ concluded that Plaintiff had not been under a disability as defined by the Act during the relevant period. (*Id*., p. 27).

On May 21, 2019, the Appeals Council denied Plaintiff's request for review. (*Id*., pp. 6-8). Plaintiff filed this action on June 27, 2019. (ECF No. 1). This matter is before the undersigned for

report and recommendation. Both parties have filed appeal briefs (ECF Nos. 14, 17), and the case is ready for decision.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least 12 consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

### III. Discussion

Plaintiff raises one issue on appeal: whether the ALJ's RFC assessment is supported by substantial evidence. (ECF No. 14). More specifically, Plaintiff argues the RFC findings are inconsistent with Plaintiff and his grandmother's testimony, the findings of Dr. Honghiran, APRN Greek, and Dr. Walz. (*Id*., pp. 2-8). After a thorough review of the record, the undersigned agrees that the ALJ's RFC assessment is not supported by substantial evidence.

A disability claimant has the burden of establishing his RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The Eighth Circuit has held that a

"claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Of concern to the undersigned is the ALJ's treatment of the medical opinion of consultative examiner, Ted Honghiran, M.D., as it was the only consultative examination conducted during the relevant time period. The ALJ afforded great weight to the opinions of the state agency medical consultants, Dr. Kelly's treatment notes, Dr. Westbrook's examination, and Dr. Honghiran's examination because he found them to be supported by Plaintiff's treatment history, objective findings, and his daily activities. (*Id.*, p. 25). The ALJ did not, however, address the disagreements between these opinions, Plaintiff's testimony that his ability to use his hands had decreased, and Dr. Honghiran's opinion that, beyond the limited use of a computer, Plaintiff's right hand was basically without function. (*Id.*, pp. 24-26).

For instance, the ALJ did not address the discrepancies between Dr. Westbrook's 2015 opinion and Dr. Honghiran's more recent 2017 opinion, nor did the ALJ discuss Plaintiff's testimony that his hands had worsened over time. As the relevant time period did not begin until April 5, 2016, Dr. Westbrook's examination occurred about eight months before the relevant time period began. (*Id.*, pp. 20, 25, 439-43). On August 13, 2015, Dr. Westbrook completed a questionnaire opining that Plaintiff could hold a pen and write, touch fingertips to palm, pick up a coin, stand/walk without an assistive device, walk on heels and toes, and squat/rise from a squatting position. (*Id.*, p. 442). He noted Plaintiff could not oppose thumb to fingers on his left hand secondary to deformity but found 100% grip strength in both hands. (*Id.*). Plaintiff testified at the first administrative hearing on February 28, 2017, that the condition of his hands had worsened.

(*Id*., p. 60). He had an appointment scheduled with his treating surgeon, Dr. James Kelly, scheduled for March 10, 2017, to discuss yet another surgery on his hands. (*Id*., p. 54). Plaintiff then had a left cubital tunnel release surgery performed on April 27, 2017. (*Id*., p. 483).

The ALJ also erroneously states that Plaintiff worked about a week washing dishes but quit the job due to back pain. (*Id*., p. 23). The exhibit the ALJ references is the July 1, 2015 Mental Diagnostic and Intellectual evaluation with Dr. Walz, in which she reports Plaintiff stated, "it got to the point that I couldn't even walk because of my back" (*Id*., p. 384); however, Plaintiff's grandmother, Paula McGhee, reported to Dr. Walz that Plaintiff actually worked one day in a restaurant, but he had cramps in his hands (*Id*., p. 387). At the hearing held on February 28, 2017, Plaintiff testified he had to quit the job as a dishwasher due to issues with his hands cramping. (*Id*., p. 59). Plaintiff also testified he had difficulties with typing because his hands would cramp up, making him unable to open his hands. (*Id*.).

On August 17, 2017, Plaintiff had a consultative exam with Ted Honghiran, M.D. (*Id*., pp. 497-98). He was observed to walk normally, was able to dress and undress himself, and get onto and off of the exam table unassisted. (*Id*., p. 493). An examination of Plaintiff's left hand revealed a severe deformity of the left hand, with no function. (*Id*.). All joints in the left hand were stiff and deformed, and his left thumb was floating with no function at all. (*Id*.). An examination of Plaintiff's right hand showed deformity, but with some ability to move, and Plaintiff was able to apply his fingertip to the computer. (*Id*.). Circulation and sensation were intact in his right hand. (*Id*.). Dr. Honghiran opined Plaintiff's prognosis was poor and believed his function would be limited. (*Id*., p. 498). He further opined Plaintiff would be able to use his right hand to operate a computer, but otherwise there was basically no function. (*Id*.). Dr. Honghiran marked no function

in either hand on the range of motion chart, with no abnormalities noted in any other areas. (*Id.*, p. 500).

At the supplemental hearing on June 18, 2018, Plaintiff testified his left hand had not improved, and continued to have basically no function. (*Id.*, p. 38). Plaintiff testified his right hand had improved somewhat, but it was basically the same as when he saw Dr. Honghiran in August 2017. (*Id.*, p. 39).

Unfortunately, the ALJ did not discuss Dr. Honghiran's opinion that Plaintiff's right hand would be basically without function beyond the ability to apply a fingertip to the computer. (*Id.*, p. 25). Instead, the ALJ found Plaintiff capable of occasional (i.e., up to one-third of the time) fingering and handling with his right upper extremity. Plaintiff's ability to apply a fingertip to a computer keyboard provides little or no support for such a finding.

The ALJ erred by failing to consider and discuss the worsening of Plaintiff's impairment of both hands, his surgery in 2017, and the significant differences between the opinions of the consultative examinations which occurred two years apart. Accordingly, the undersigned finds that the ALJ's RFC determination is not supported by substantial evidence.

Remand is necessary to allow the ALJ to reconsider Plaintiff's RFC, specifically his ability to use his hands and the combined effect of his impairments. As the Eighth Circuit held in *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether a claimant has the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. On remand, the ALJ should request a complete RFC assessment from Plaintiff's treating hand surgeon, Dr. James Kelly, for the relevant period. If Dr. Kelly is unable or unwilling to provide an RFC assessment, then the ALJ should order a consultative examination with an orthopedic hand specialist, complete with a thorough RFC

assessment. With this additional evidence, the ALJ should re-evaluate the Plaintiff's RFC and reconsider his step four and step five findings.

## IV. Conclusion

Based on the foregoing, it is recommended that the Commissioner's final decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of April 2020.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE